Johnson, J.
In the view I take of this case, it is wholly unnecessary to inquire whether the contract between the plaintiffs and McMillan, the cashier of the Bank of Akron, in pursuance of which the bills in question were endorsed to the plaintiffs, was in all respects valid and binding upon said bank, as between it and the plaintiffs. The bank of Akron is not a party to the action, nor is its legal representative, the State Bank of Ohio. The defendant claims no title -to the paper, and does not pretend to have any interest in it, except as a promisor-, liable to pay to any proper holder. There is no party before the court who has any legitimate 'interest in 'questioning the plaintiffs’ title, or who- has, as it seems to me, under the circumstances of this case, any right to be -heard on that question. *567 There is no connection shown between the defendant and the State Bank of Ohio which represents the Bank of Akron. It is not shown or pretended that the defendant has been forbidden to pay the bills to the plaintiffs, or even requested not to do so; and, for aught that appears, the State Bank of Ohio acquiesces in the plaintiffs’ claim of title to these obligations. It is of no consequence whatever that the Bank of Akron undertook'to repudiate the transaction by giving .notice to the plaintiffs before its insolvency. All its rights, as the case shows, are now vested in the State Bank of Ohio, and the latter bank may, upon better advisement, conclude never to contest the plaintiffs’ claim. The legal presumption is that it does not .ntend to do so, as the contrary is not shown. The defendant stands here, therefore, as a mere volunteer, in behalf of others not before the court, and who make no claim on their‘own account. Confessedly he owes the debt. He has no defense, whatever, on his own account, and should he succeed in defending, on the grounds on which the litigation seems thus far to have proceeded, he may escape the payment of a just debt altogether. This the court should not allow in a case like this, except upon clear and well-established grounds. It will be time enough to determine whether any other person has a better title, when such person shall éome before the court to claim the bills in question, or their proceeds, from the plaintiffs. Upon what grounds, then, can the defendant, as a mere debtor, be permitted to defeat the action? It has been held that' if a defendant can show that the plaintiff obtained the note by his own fraudulent act, he has a right to defeat the. action on that ground, although he may be liable to pay the note to the true owner. (Talman v. Gibson, 1 Hall, 308.) Oakley, j., in delivering the opinion in that case, says: “ This proceeds on the general doctrine that no man can acquire a right, by his own fraud, to sustain an action in any court; and it is a principle of general application.” *568 In that case, however, it appears that the defense was set up for the defendant by one Hyslop, who claimed to be the true owner of the note and had demanded it of the plaintiff. The same principle was adopted by this court in Houghton v. McAuliffe, decided at the last December term (reported 26 Howard’s Practice Eeports, 270). The action was against the makers, who refused to pay on the ground of the illegality of the transfer to the plaintiff. It was held that the transfer of the note was contrary to the statute, and that the party who transferred it to the plaintiff was guilty of a criminal offense in obtaining the note, and could transfer no title to any one having notice that it belonged to another; and that the plaintiff, under the circumstances, must be deemed to have notice that the note belonged to the company to which it was given, and not to the person of whom he purchased it.
And so the finder of negotiable paper, or the thief who steals it, acquires no title, although either may transfer a good title to a bona fide purchaser. (2 Parsons on Notes and Bills, 265 to 270 inclusive, and cases there cited.) The same rule would, I suppose, apply to the case of one obtain ing such paper through any positive breach of law. But as I understand the rule, nothing short of actual malafides, or notice thereof, will enable a maker or endorser of such paper to defeat an action brought upon it by one who is apparently a regular endorser or holder; especially where there is no defense as to the indebtedness.
This rule is founded in the most obvious dictates of reason and sound policy, and should be inflexibly maintained. As to anything beyond the bona fides of the holder, the defendant, who owes the debt, has no interest. This was held in Gage v. Kendall (15 Wend. 640.) The defense in that case was, that the plaintiff did not own the note, although he appeared to be the endorser; and that the action had been commenced without his knowledge or consent, or any notice of, or assent to the pretended transfer to him. *569 But it was held that the owner had the right to fill up the blank endorsement with any name he pleased, and the person whose name was thus used would be deemed on record as the legal owner; and that whether he was so in fact or not, he could sue as trustee for the real owner, and the defendant had no' concern with the question. The court sáy it was not a case of mala fide possession, and remark: “Why should, the defendant give himself the trouble to investigate the plaintiff’s title? He owes the money to some" one.” The principle of that case applies here, with full force. There is no ground for pretending that the plaintiff’s possession is mala fide. Upon the face of the .bills, their title is complete and perfect. They belonged to the Bank of Akron,' and were regularly transferred to the American Exchange Bank by the endorsement of McMillan as cashier of the Bank of Akron. He was the financial officer of the latter bank, and the only person who could thus transfer them. His authority to make such transfer ex officio for a legitimate purpose is undoubted. (Ang. and.Ames on Corp. 296; 2 Parsons on Notes and Bills, 7; Fleckner v. The Bank of the United States, 8 Wheat. 338.)
I do not understand that any question is made in behalf of the defendant in respect to the validity of the transfer to the American Exchange Bank; or .but that the defendant might have been compelled, by action brought by that bank, to pay the amount of the bills. The point is, that the cashier had no authority to pledge the bills while there to the plaintiffs as a security for the loan, and therefore the transfer by that bank under the authority, or by the direction of McMillan to the plaintiffs is void, and confers no title upon the latter. But it is very clear that the plaintiffs were acting in good faith—all the time supposing and believing that they were, in fact, dealing with the Bank of Akron, and with no one else, and took the bills in question without any-notice or suspicion of any fraudulent conduct, or excess of authority, on the part of McMillan, the cashier. *570 That must be sufficient as against the defendant, who is without defense upon, the obligations themselves. And even if it should be held as between the Bank of Akron, or its legal representatives, and the plaintiffs, that the lat-. ter were bound to inquire into the authority of the cashier and take notice of its extent (as to which I shall express ' no opinion), it is a question which in no way concerns the defendant, and upon which he cannot be allowed to defend, and escape the payment of his obligations. . It is enough that the plaintiffs make out a title free from mala fides on their part, and which is every way sufficient for his protection. The issue, beyond that between the parties before the court, is wholly,immaterial; and if established against the plaintiffs, would constitute no defense to this action. The title is good as against the defendant, and that is sufficient. If there are any others who claim a title to the instruments superior to that of the plaintiffs, it can be determined whenever they come before the court to assert it.
The point that the whole transaction is void, as a positive breach of the laws of the state of Ohio, is untenable. The contract was not made in that state, and was not to be performed there; it was made in the state of Connecticut, and was to be performed there; and there is no pretense that it infringed any law of that state.
It was not an essential part of the contract that the bills of the plaintiffs’ bank should be circulated in the state of Ohio. The borrower might have circulated them elsewhere, or withheld them from circulation altogether, without any violation of the contract. It is quite possible that the plaintiffs might not be able to enforce their contract in the courts of the state of Ohio. As a general rule, no people are bound to enforce, or hold valid in their courts of justice, any contract which is injurious to their public rights, or offends their morals, or contravenes their policy, or via< lotes a public law. (2 Kent’s Com. 458.) Though I am inclined to the opinion that even then a contract of this *571 kind would be enforced, notwithstanding their statute. It is quite certain that our courts would enforce it under similar circumstances against one of our own citizens. In this respect it would be analogous, in principle, to the cases of The Merchants' Bank of New York v. Spalding (5 Selden, 53); and Tracy v. Talmage (14 N. Y. R. 162.) Certainly it does not violate any law of Connecticut or of this state, and we could scarcely be expected to give any stich extraordinary effect in our courts to a statute of Ohio as to hold that the contract cannot be enforced here. My conclusion is that the judgment is right, and should be affirmed. .
All the judges concurring, judgment affirmed.